```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------------------x
     UNITED STATES OF AMERICA,
 3                Plaintiff,
                                              04 CR 203
 4

 5           versus            United States Courthouse
                               225 Cadman Plaza East
 6                             Brooklyn, N.Y.  11201
     DUPREE HARRIS,
 7
                 DEFENDANT.
 8
     ------------------------------------------x
 9
                                       July 20,  1999
10                                     5:00 p.m.
             TRANSCRIPT OF SENTENCE
11   Before:  HON. ALLYNE R. ROSS,
                                     DISTRICT COURT JUDGE
12
                           APPEARANCES
13
     ROSLYNN R. MAUSKOPF
14   United States Attorney - Eastern District of New York
     One Pierrepont Plaza
15   Brooklyn, New York  11201
           LEE FREEDMAN, ESQ.
16         MORRIS FODEMAN, ESQ.
     Assistant United States Attorneys
17

18   ATTORNEY FOR DEFENDANT:

19   STACEY RICHMAN, ESQ.

20

21
     Court Reporter:  ALLAN R. SHERMAN, CSR, RPR
22                    225 Cadman Plaza East Rm 374
                      Brooklyn, New York  11201
23                    Tel: (718) 260-2529  Fax: (718) 254-7237

24

25   Proceedings recorded by mechanical stenography, transcription
     by CAT.
```

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court   Eastern District of New York

1
2          THE COURT:  Addressing the advisory guidelines
3   disputes, I find that record overwhelmingly supports the
4   probation department's conclusion that defendant's base
5   offense level is 38 as the crack cocaine conspiracy defendant
6   organized and led distributed far in excess of 1.5 kilograms
7   of crack cocaine based on the trial evidence.
8          This was established in part by the credible
9   testimony of trial witnesses cited at page 4 of the
10  government's letter brief.
11         The conclusion as to amount of crack cocaine for
12  which defendant was responsible as reasonably foreseeable to
13  him by virtue of his leadership of the conspiracy was also
14  supported by the credible testimony of a number of other
15  government witness at trial.
16         Defendant's argument that the trial evidence does
17  not support this conclusion is unfounded.  Based on the trial
18  evidence, it is similarly clear that the role Harris played in
19  the conspiracy merits the 4 level enhancement.  Plainly, the
20  conspiracy involved five or more participants.  These
21  included, to mention just a few, Harris, Cobb, McDonald,
22  McIntosh, Harley, Barrett, Reed, Pettit, Wright, King,
23  Cleveland, Blacksheer and Helm.
24         Further, Harris was amply proven to be the leader
25  and organizer of the conspiracy, occupying a role of far

1  greater significance than his only manager, Cobb.

2  The testimony of the witnesses was overwhelming that
3  Harris was squarely in charge of the organization and that his
4  manager Cobb was wholly subordinated to Harris' authority.

5  It was clear that Harris had the ultimate
6  decision-making authority and that he controlled all of the
7  others directly or indirectly.  The testimony was also clear
8  that Harris supplied virtually all of the crack and ultimately
9  received all or most of the proceeds with the exception of
10 amounts paid to Cobb and the distributors.  Harris directly
11 recruited at least four of the dealers and through Cobb
12 recruited others.

13 The evidence also established that apart from basic
14 day-to-day operations, Cobb, Harris' only manager, had
15 relatively little authority.  Harris also took the lead in
16 protecting the organization through show of force and
17 violence.  For example, when Barrett tried to persuade Reed
18 not to distribute Harris' crack cocaine, Harris threatened
19 Barrett with a gun to prevent his interference.  When Sway, a
20 rival drug dealer began to sell crack near Harley's apartment
21 which became an important distribution center for the
22 conspiracy, Harris viciously beat Sway.

23 The evidence of Harris' frequent absence from the
24 Glens Falls area in no way detracted from the central
25 significance of his role in the organization.

1          As the government points out, Harris, the sole
2   organizer and leader of the conspiracy, employed many means
3   for maintaining his control over the organization including
4   his more than 700 telephone calls to Cobb, King and
5   Blacksheer.  Nor did Harris' employment of a manager, Cobb, in
6   any way diminish the centrality of Harris' role.
7          The evidence established that Cobb's role, though
8   managerial, was of dramatically lesser importance to the
9   conspiracy, so much so that I view the vast discrepancy
10  between their roles as a factor somewhat mitigating the
11  seriousness of Cobb's criminal conduct.
12         Harris' adjusted offense level under the advisory
13  guidelines is thus correctly calculated by the probation
14  department at level 42.  Although Harris disputes various
15  aspects of his criminal history calculation, he acknowledges
16  that even if he were to prevail on all of his arguments, his
17  criminal history category would remain at category six.
18         Accordingly, defendant's advisory guidelines given
19  an adjusted offense level of 42 and a criminal history
20  category of six carry a range of imprisonment from 360 months
21  to life.
22         In addition to his conviction of the conspiracy
23  count, count two, and the substantive distribution count,
24  count four, defendant was also convicted of a charge of use of
25  a firearm in furtherance of a drug trafficking crime, count 3.

1       Defendant argues that notwithstanding the trial
2  evidence establishing that he brandished a firearm, which
3  under Section 924(c)(1)(A)(ii), carries a mandatory minimum
4  consecutive term of seven years imprisonment, he can not be
5  sentenced to more than five years for this conviction because
6  the jury was not asked to make a special finding of
7  brandishing beyond a reasonable doubt.
8       The government is correct, however, that defendant's
9  argument is foreclosed by the decision of the Supreme Court in
10 Harris versus United States, 536 U.S. 545, 2002.  In Harris,
11 the Supreme Court held that brandishing a firearm within the
12 meaning of 18 United States Code Section 924(c)(1)(A) is a
13 sentencing factor rather than an element of the crime.
14 Because it does not increase defendant's sentence beyond the
15 statutory maximum, the Court concluded, it may be determined
16 by the Court by a preponderance of the evidence rather than by
17 a jury.
18      The Second Circuit in an unpublished opinion in
19 United States versus Mackie, 2005 WestLaw, 3263787, Second
20 Circuit 2005, recently held that regardless of the merits of
21 the argument that Booker undermined Harris, "We must reject
22 it".  The Circuit wrote:  "This Court must adhere to Supreme
23 Court precedent unless and until the Supreme Court itself
24 overrules it".  Citing State Oil Company versus Kahn, 522 U.S.
25 3 at 20, 1997.

1          Accordingly, I am required to sentence defendant on
2    count two to seven years imprisonment consecutive to his
3    sentence on counts two and four.
4          Turning to the sentencing statute, I am persuaded
5    based on an assessment of the statutory factors, that the
6    sentence yielded by the advisory guidelines, that is a total
7    of 37 years imprisonment, is of sufficient but not undue
8    severity to accomplish the goals of sentencing.
9          As to the nature and circumstances of the offense, I
10   consider defendant's criminal conduct that was the subject of
11   this prosecution as extraordinarily serious.  The conspiracy
12   defendant organized and led distributed a massive amount of
13   crack cocaine, far exceeding the amount calling for the
14   maximum base offense level of 38.
15         To maintain control of the crack cocaine
16   organization, defendant did not hesitate to employ violence,
17   for example, when he pointed a gun at Barrett to dissuade him
18   from interfering with the conspiracy's use of Reed and her
19   apartment for the distribution of crack cocaine; or when he
20   violently beat Sway, a rival drug dealer, or forced another
21   individual to deal drugs for him under threat of serious
22   bodily injury.
23         Further, additional evidence established that Harris
24   carried a firearm in furtherance of the conspiracy for
25   protection and intimidation.

Indeed, had the government not chosen to separately prosecute him for the firearms offense, which would have resulted in a two level enhancement in his adjusted offense level for use of a firearm in furtherance of a conspiracy had he not been prosecuted for the firearms offense, Harris' advisory guidelines would have called for a term of lifetime imprisonment.

Defendant's pivotal organizational and leadership role as previously described is yet another factor aggravating the seriousness of his offense.

Turning to the history and characteristics of the defendant, at the age of 31 he has established himself as a habitual violent offender with a criminal history placing him squarely within the highest criminal history category, six. Prior to his most recent sentence to 15 years to life for bribing witnesses to influence their testimony, defendant's convictions included multiple weapons offenses and crimes involving narcotics and grand larceny.

In connection with his most recent sentence, a justice of the New York State Supreme Court adjudicated Harris under New York Penal Law Section 70.10 as a persistent felony offender requiring extended incarceration and lifetime supervision, commenting that he: "Has performed criminal acts repeatedly with very little time in between to do anything else".

1           The government has also chronicled at pages 12 to 14
2   of its sentencing submission alleged criminal conduct by the
3   defendant that has not resulted in any conviction.
4           I do not find it necessary to rely on these matters
5   in reaching a conclusion regarding an appropriate sentence in
6   this case.  Notably, it cannot seriously be disputed that four
7   of defendant's convictions, including his conviction in the
8   instance case, were for crimes during a period of parole or
9   supervision.  While defendant's submissions demonstrate strong
10  support by his family and friends, I am in agreement with
11  Judge Demerest, that such support is overwhelmingly outweighed
12  by the persistence and seriousness of the defendant's record
13  of criminal conduct.
14          Finally, defendant's contention that his restricted
15  conditions of confinement warrant leniency in sentencing are
16  substantially undercut by certain of the justifications for
17  imposing them which were previously addressed in this Court's
18  July 1st, 2005 opinion and order concerning an anonymous jury
19  and are again documented in part by the government's
20  sentencing submission.  But in any event, even assuming all of
21  that, defendant's conditions of confinement contentions are
22  more than sufficiently accommodated by my decision to run
23  defendant's federal sentence concurrently with the
24  undischarged portion of defendant's state sentence,
25  notwithstanding the fact that defendant's criminal conduct in

1   the two cases is wholly unrelated.

2            In sum, I conclude that this 31 year old defendant

3   is a habitual violent criminal who must be segregated to

4   protect society from his well established recidivism and the

5   violent harms he has repeatedly inflicted on others.

6            Given the selected sentence, defendant will not be

7   released to society until he is into his 60s at a time when

8   his recidivism and criminal tendencies should have

9   considerably abated.

10           Accordingly, I sentence the defendant on count two

11  to the custody of the Attorney General for a period of 360

12  months which is consecutive to the sentence on count 3, but

13  concurrent with the sentence on count four and the

14  undischarged term of imprisonment the defendant is serving, to

15  be followed by a five year period of supervised release.

16           I sentence the defendant on count four to the

17  custody of the Attorney General for a period of 240 months to

18  run consecutively to the seven year term on count 3 but

19  concurrently with the term he will be serving on count two and

20  the undischarged term of imprisonment the defendant is

21  serving, and that entails a three year period of supervised

22  release.

23           Finally, on count 3, I sentence Mr. Harris to seven

24  years custody to be imposed to run consecutively to the

25  sentence on counts two and four and a five year period of

1  supervised release.
2       I'm going to impose as a special condition of
3  supervised release a search condition.  This is based on the
4  nature of the offense that was the subject of the trial before
5  me.  The defendant shall submit his person, residence, place
6  of business, vehicle or any other premises under his control
7  to a search on the basis that the probation officer has
8  reasonable belief that contraband or evidence of a violation
9  of conditions of relation may be found.
10      The search must also be conducted in a reasonable
11 manner, at a reasonable time.  Failure to submit to a search
12 may be grounds for revocation and the defendant shall inform
13 any other residents that the premises may be subject to search
14 pursuant to this condition.
15      I also prohibit the possession of a firearm.  I make
16 a finding Mr. Harris is unable to pay a fine but I will impose
17 the mandatory 300-dollar special assessment.
18      I make no recommendation to the Bureau of Prisons
19 with respect to the level of confinement.  I believe the
20 Bureau of Prisons has at least as much information as I do,
21 but insofar as consistent with whatever the needs are of the
22 Bureau of Prisons for designation, I recommend that he be
23 housed in a facility as close as possible to the New York
24 area.
25      Obviously, Mr. Harris, you know you are entitled to

```
 1   appeal the conviction, you are entitled to appeal the
 2   sentence.  I'm sure Ms. Richman will seek to remain your
 3   lawyer through that process.
 4              A notice of appeal must be filed within 10 days and
 5   I am sure that Ms. Richman will file a notice of appeal within
 6   the stated period.
 7              MS. RICHMAN:  Might I add two points just to correct
 8   you.
 9              Mr. Harris is now 33 years old.
10              THE COURT:  Thank you.
11              MS. RICHMAN:  And under the marshal system, he is
12   still designated under SAMS which if you can direct
13   corrections, the card has been checked today.
14              THE COURT:  Honestly, I have no knowledge of any of
15   this.  I can't do anything.
16              MS. RICHMAN:  I just wish to make it clear,
17   your Honor, that there is still a problem.
18              THE COURT:  I have invited you from the beginning,
19   if there is some separate vehicle by which I or someone else
20   should be addressing any of these matters, then do it.
21              MS. RICHMAN:  I shall.
22              Thank you, your Honor.
23              MR. FREEDMAN:  Good evening, your Honor.
24              MS. RICHMAN:  May I simply give him legal documents
25   because a number of things have been returned to me and some
```

1   of the things that I have submitted to him --
2              THE COURT:  I'm looking at the marshals.
3              Is there a problem?
4              (Matter concluded.)

ALLAN R. SHERMAN, CSR, RPR   Official Court Reporter
United States District Court   Eastern District of New York