UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
:
UNITED STATES OF AMERICA,                        :     04-CR-203 (ARR)
:
                 *Plaintiff*,                                          :     NOT FOR ELECTRONIC
:     OR PRINT PUBLICATION
  -against-                                                         :
:
DUPREE HARRIS,                                               :     **OPINION & ORDER**
:
                 *Defendant*.                                       :
X
------------------------------------------------------------------------

ROSS, United States District Judge:

Before me is defendant Dupree Harris's motion for a sentence reduction pursuant to 18 U.S.C. §§ 3582(c)(1)(B), 3582(c)(2), and 3582(c)(1)(A). For the following reasons, I deny Mr. Harris's motion.

## BACKGROUND

In 2005, a jury found Mr. Harris guilty of conspiracy to distribute or possess with intent to distribute at least fifty grams of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), distribution or possession with intent to distribute an unspecified amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and using or carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *See* Verdict Sheet, ECF No. 139.[1] These counts stemmed from Mr. Harris's participation in a cocaine base distribution

---

[1] The verdict sheet asked the jurors if they found Mr. Harris guilty of "the offense of using or carrying a firearm during and in relation to a drug trafficking crime or possessing a firearm in furtherance of a drug trafficking crime." Verdict Sheet 3. As Mr. Harris points out, *see* Mem. in Supp. re Mot. to Reduce Sentence ("Mot. to Reduce") 50–53, ECF No. 256, eight years after his trial the Supreme Court held that a conviction under 18 U.S.C. § 924(c)(1)(A)(ii) requires that the jury find beyond a reasonable doubt that the defendant brandished a firearm. *See Alleyne v. United States*, 570 U.S. 99, 117 (2013).

1

conspiracy based in Glens Falls, New York. Along with coconspirators, Mr. Harris "sought out local drug dealers [in the Glens Falls area], threatened them with physical violence, then took over their respective [cocaine base] businesses." Presentence Investigation Report ("PSR") ¶ 5. According to witnesses at trial, while Mr. Harris was involved in this conspiracy, he "carr[ied] a firearm on his person for protection purposes and for use in intimidating rival . . . dealers." *Id.* ¶ 18. Witnesses also testified that Mr. Harris controlled the operation and recruited others to participate. *Id.*; *see also* Tr. of Sentencing 43:2–45:11, ECF No. 187.

Mr. Harris's sentencing hearing took place on September 20, 2006. I found that Mr. Harris organized and led the distribution conspiracy and distributed "far in excess of 1.5 kilograms" of cocaine base, resulting in a base offense level of 38 and a total offense level of 42. Tr. of Sentencing 43:2–7, 45:12–14; PSR ¶¶ 26–31. Based on these calculations, Mr. Harris's advisory guideline sentence for the drug charges was 360 months to life in prison; he was also subject to a mandatory minimum sentence of seven years—or eighty-four months—on the firearm charge, to run consecutively with his sentence on the other two counts. Tr. of Sentencing 45:18–21, 47:1–3; PSR ¶¶ 86–87. I sentenced Mr. Harris to 444 months' imprisonment: 240 months for the possession and distribution count and 360 months for the conspiracy count, to run concurrently, along with eighty-four months for the firearm offense, to run consecutively. Tr. of Sentencing 50:10–51:1; J. as to Dupree Harris 4, ECF No. 188. In selecting this sentence, I noted the "extraordinarily serious" nature of Mr. Harris's offense, which involved the distribution of "a massive amount" of cocaine base; Mr. Harris's violent conduct and use of threats, including an incident in which he pointed a gun at a coconspirator to threaten him, another in which he "violently beat" a rival, and a third in which he forced someone "to deal drugs for him under serious threat of bodily injury"; his "pivotal organizational and leadership role" in the conspiracy; and his substantial history of violent and

drug-related crimes. Tr. of Sentencing 47:4–49:13. I concluded that a 444-month sentence was appropriate "to protect society from [Mr. Harris's] well established recidivism and the violent harms he ha[d] repeatedly inflicted on others." *Id.* at 50:2–5.

Mr. Harris appealed his conviction to the Second Circuit, which affirmed my judgment by summary order on March 17, 2008. *See* Mandate of USCA, ECF No. 216. Following the Second Circuit's decision, Mr. Harris filed a habeas petition under 28 U.S.C. § 2255, alleging ineffective assistance of counsel and requesting that I vacate his conviction and sentence. *See generally Harris v. United States*, 09-CV-4380. I denied his petition, Mr. Harris appealed, and the Second Circuit granted the government's motion for summary affirmance. *See generally id.* Two years later, Mr. Harris requested that I appoint counsel to represent him in a motion for sentence reduction under the Fair Sentencing Act of 2010. *See* Mot. to Appoint Counsel, ECF No. 221. I referred the matter to an attorney from the Federal Defenders, who represented that he "found no non-frivolous motion to make on [Mr. Harris's] behalf" and requested that I close the case file. Mot. to Dismiss, ECF No. 226. I entered an order doing so on December 11, 2012. Order, ECF No. 227.

Mr. Harris's current motion asks me to modify the remainder of his sentence to time served or supervised release under three separate provisions of 18 U.S.C. § 3582. First, he claims that he is eligible for a sentence reduction under § 404(b) of the First Step Act and 18 U.S.C. § 3582(c)(1)(B) and argues that a reduction is warranted in his case. Mem. in Support re Mot. to Reduce Sentence ("Mot. to Reduce") 41–46, ECF No. 256. Mr. Harris next cites 18 U.S.C. § 3582(c)(2) and contends that I should modify his sentence because the advisory range under the U.S. Sentencing Guidelines for his drug-related offenses has been lowered by the Sentencing Commission. *Id.* at 44–46. Finally, he argues that "extraordinary and compelling reasons" warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A). *Id.* at 47–49. The government opposes

3

the motion. Mem. in Opp. re Mot. to Reduce Sentence ("Opp. re Mot. to Reduce"), ECF No. 262.

## DISCUSSION

**I.   I Deny Mr. Harris's Motion for a Sentence Reduction under § 404(b) of the First Step Act and 18 U.S.C. § 3582(c)(1)(B).**

The first ground for sentence reduction Mr. Harris cites is § 404 of the First Step Act. In 2010, Congress passed the Fair Sentencing Act, which "increased the drug amounts needed to trigger mandatory minimum sentences for crack cocaine trafficking offenses." *United States v. Moore*, 975 F.3d 84, 87 (2d Cir. 2020). Although the Fair Sentencing Act applied only to defendants sentenced on or after August 3, 2010, Congress changed that in 2018 by passing the First Step Act. *Id.* Under § 404 of the First Step Act, a court that sentenced a defendant prior to August 3, 2010, for an offense covered by the Fair Sentencing Act "may impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." *Id.* (quoting First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 123 Stat. 5194, 5222). The statute makes clear that such a reduction is discretionary, *id.*, and the Second Circuit has held that the proper vehicle for a defendant to raise a motion under the First Step Act is 18 U.S.C. § 3582(c)(1)(B), "which provides that 'a court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute,'" *United States v. Holloway*, 956 F.3d 660, 666 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(B)).

As with all motions brought under § 404 of the First Step Act, my review of Mr. Harris's motion consists of two parts. First, I "must determine whether the defendant is eligible for a reduction"—in other words, whether he was convicted of and sentenced for an offense covered by the Fair Sentencing Act. *Moore*, 975 F.3d at 89. Second, if he is eligible, I "must determine whether, and to what extent, to exercise [my] discretion to reduce the sentence." *Id.* In making this determination, I may consider the sentencing factors articulated in 18 U.S.C. § 3553(a) but am not

required to apply them. *United States v. Moyhernandez*, 5 F.4th 195, 205 (2d Cir. 2021) ("[W]hile district courts are not bound to apply the § 3553(a) factors in every First Step Act case, those factors may often prove useful."). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established in [the Sentencing Guidelines] . . . ;
> (5) any pertinent [Sentencing Commission] policy statement . . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Applying that two-part test here, I find that Mr. Harris is eligible for a sentence reduction for his conviction for conspiracy to distribute or possess with intent to distribute at least fifty grams of cocaine base.[2] When I sentenced Mr. Harris to 360 months' imprisonment on this count in 2006, a defendant who possessed at least fifty grams of cocaine base triggered the enhanced sentencing scheme set forth in 21 U.S.C. § 841(b)(1)(A), which provides for a mandatory minimum of ten

---

[2] Mr. Harris also argues that he is eligible for a reduction for his other drug offense: distribution or possession with intent to distribute an unspecified amount of cocaine base. Mot. to Reduce 43–44. But Mr. Harris was convicted on this count under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). *See* J. as to Dupree Harris 2. The Supreme Court has made clear that convictions under § 841(b)(1)(C) are outside the scope of the First Step Act. *See Terry v. United States*, 141 S. Ct. 1858, 1862–64 (2021); *see also United States v. Jennings*, No. 20-2677, 2021 WL 5365806, at *1 (2d Cir. Nov. 18, 2021) ("In June 2021, the United States Supreme Court held that, because the Fair Sentencing Act did not modify the statutory penalties for convictions under 21 U.S.C. §§ 841(a) and (b)(1)(C), such convictions are not covered offenses and therefore persons convicted of those offenses are ineligible for First Step Act relief." (citing *Terry*, 141 S. Ct. at 1862–63)).

5

years and a maximum of life in prison. *See, e.g.*, *United States v. Davis*, 961 F.3d 181, 184 (2d Cir. 2020); *see also* 21 U.S.C. § 841(b)(1)(A). Four years later, however, § 841(b)(1)(A) was modified by § 2 of the Fair Sentencing Act: now, a defendant convicted of possessing fifty grams of cocaine base is subject instead to 21 U.S.C. § 841(b)(1)(B), which sets a sentencing range of five to forty years' imprisonment. *See United States v. Simons*, 375 F. Supp. 3d 379, 384 (E.D.N.Y. 2019); Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372; 21 U.S.C. § 841(b)(1)(A). Mr. Harris was thus convicted of a "covered offense" under the First Step Act, making him eligible for a sentence reduction. *Cf. United States v. Snow*, 831 F. App'x 597, 598 (2d Cir. 2020) (holding that a defendant convicted under the same statute was eligible for relief under the First Step Act).

Accordingly, I move on to the second inquiry—whether I should exercise my discretion to reduce Mr. Harris's sentence. In support of his motion, Mr. Harris largely relies on evidence of his post-conviction rehabilitation and service to others, though he also argues that his COVID-19 comorbidities warrant a reduction. *See, e.g.*, Mot. to Reduce 37. Despite their diligent efforts, Mr. Harris's attorney and counsel for the government were unable to obtain copies of Mr. Harris's medical records from Shawangunk Correctional Facility. *See* Reply Mem. in Supp. 10, ECF No. 264; Fourth Mot. for Extension of Time, ECF No. 261. But I accept Mr. Harris's submission that he suffers from an enlarged heart, diabetes, and high blood pressure, *see* Reply Mem. in Supp. 10, and I appreciate that at least some of these conditions place him at higher risk for developing complications or severe symptoms from COVID-19—a virus that has proved particularly contagious in prison settings, *see* People with Certain Medical Conditions, CDC (last updated May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *United States v. Skelos*, No. 15-CR-317 (KMW), 2020 WL 1847558, at

6

*1 (S.D.N.Y. Apr. 12, 2020) (noting that "[j]ails and prisons are powder kegs for infection" because incarcerated people "cannot practice social distancing, control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning and laundry, avoid frequently touched surfaces, or sanitize their own environment"). I also commend Mr. Harris's ongoing efforts at rehabilitation, the positive influence he has had on other people incarcerated with him, and the strong relationships he has maintained with his family members. However, I find that these considerations are ultimately overshadowed by the § 3553(a) factors that support maintaining his current sentence.

To begin, Mr. Harris's offense was without a doubt a serious one. While he was convicted of conspiring to distribute at least fifty grams of cocaine base, I found during sentencing that the actual quantity at issue was "far in excess of 1.5 kilograms," Tr. of Sentencing 43:2–7; the Presentence Investigation Report conservatively calculated it as as much as 4.372 kilograms and explained that Mr. Harris, along with his coconspirators, effectively took over the distribution businesses of a number of dealers in Glens Falls, PSR ¶¶ 5, 19. But it is not just the amount of drugs at issue that makes Mr. Harris's crime especially serious. Mr. Harris served as the primary leader and organizer of the entire conspiracy, personally recruiting many of the dealers who worked with him, controlling those dealers directly and indirectly, supplying "virtually all of" the drugs dealt, and "receiv[ing] all or most of the proceeds." Tr. of Sentencing 44:5–12. In this capacity, Mr. Harris "also took the lead in protecting the organization through show of force and violence," including through the use of a firearm. *Id.* at 44:15–22, 47:15–22. As I explained at his 2006 sentencing hearing:

> To maintain control of the crack cocaine organization, defendant did not hesitate to employ violence, for example, when he pointed a gun at [a rival dealer] to dissuade him from interfering with the conspiracy's use of [a third person] and her apartment for the distribution of crack cocaine; or when he violently beat [a rival drug dealer];

7

  or forced another individual to deal drugs for him under threat of serious bodily injury.

*Id.* at 47:15–22. Mr. Harris's offense conduct thus counsels against a sentence reduction.

  Also weighing against a sentence reduction is Mr. Harris's personal history. Though Mr. Harris was just thirty years old when he was arrested in the current case, at his sentencing hearing in 2006 I found that he had already "established himself as a habitual violent offender with a criminal history placing him squarely within the highest criminal history category, VI." *Id.* at 48:11–14. This history began when he was arrested for—and eventually convicted of—possession of a loaded firearm at age sixteen, during which time he punched one of the arresting officers and attempted to flee. PSR ¶ 42. In the years that followed, he accrued two additional convictions for attempted possession of firearms, one of which involved Mr. Harris, "acting in concert with other persons, discharg[ing] a gun causing the death of one other person and injury to another," and a conviction for possessing a controlled substance. *Id.* ¶¶ 43–45. Perhaps most seriously, in 2002 he was arrested for bribing witnesses in the murder trial of his half-brother Wesley Sykes. *Id.* ¶ 47. Before Mr. Sykes's trial commenced, Mr. Harris paid three witnesses at least $500 to recant earlier statements incriminating Mr. Sykes and to "point the finger" at another individual. *Id.* "After the three witnesses learned that a witness had been murdered after he declined to accept money from [Mr. Harris], they each admitted . . . that they had lied." *Id.* Mr. Harris fled following their admissions but was ultimately convicted of bribery and sentenced to serve fifteen years to life in state custody. *Id.* Moreover, Mr. Harris committed both the bribery offense and the crimes he was convicted for in this case during periods of parole or supervision. Tr. of Sentencing 49:6–9. The New York State Supreme Court justice who sentenced him for his bribery charge observed that, up to that point, Mr. Harris had "performed criminal acts repeatedly with very little time in between to do anything else." *Id.* at 48:19–25. While I take seriously Mr. Harris's efforts while incarcerated

to change the direction of his life, I am still convinced that "the persistence and seriousness of [his] record of criminal conduct" weighs in favor of incarceration. *Id.* at 49:12–13.

Finally, I consider the need for Mr. Harris's sentence to reflect the seriousness of his offense, afford adequate deterrence, and protect the public. As discussed above, I consider Mr. Harris's offense to be exceptionally serious. Though thirty-seven years is a substantial amount of time for anyone to spend in prison, I find that it is warranted in light of the gravity of Mr. Harris's conduct and the harm he caused both to the individuals involved in the conspiracy and to the larger Glens Falls community, as well as for the purpose of deterring others who may consider committing similar offenses. I am also cognizant of the potential danger to public safety that Mr. Harris poses. At his 2006 sentencing hearing, I found that Mr. Harris was "a habitual violent criminal who must be segregated to protect society from his well-established recidivism and the violent harms he has repeatedly inflicted on others" and selected his sentence so that he will "not be released to society until he is into his sixties, at a time when his recidivism and criminal tendencies should have considerably abated." Tr. of Sentencing 50:6–9. Though Mr. Harris claims he has changed since then and has presented evidence in support of that claim, I must also keep in mind his repeat offenses prior to incarceration, many of which involved him both possessing and using a firearm, his history of threatening, harming, and/or bribing people who frustrated his objectives, and the reasonable risk that he may retaliate against those involved in his criminal operation, especially the people who testified against him at trial. In light of these concerns, I find that Mr. Harris's continued incarceration is necessary to protect the public.

Considering all the § 3553(a) factors together, I conclude that they outweigh the evidence of Mr. Harris's rehabilitation and the risks he faces from COVID-19. Accordingly, I decline to reduce his sentence under § 404 of the First Step Act and 18 U.S.C. § 3582(c)(1)(B).

**II.     I Deny Mr. Harris's Motion for a Sentence Reduction under 18 U.S.C. § 3582(c)(2).**

Mr. Harris also urges me to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), which "provides that a court may reduce the term of imprisonment of a defendant who had been sentenced 'based on a sentencing rage that has subsequently been lowered by the Sentencing Commission,'" *United States v. King*, 813 F. App'x 690, 692 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(2)). In order to evaluate Mr. Harris's motion, I must conduct a two-step inquiry. *Dillon v. United States*, 560 U.S. 817, 826 (2010). "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in [U.S. Sentencing Guidelines] § 1B1.10 to determine [his] eligibility for a sentence modification and the extent of the reduction authorized." *Id.* If Mr. Harris passes this step, I move on to consider "whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Id.*

Beginning with step one, I find that Mr. Harris is eligible for a sentence reduction under § 3582(c)(2) and § 1B1.10 of the Guidelines. When I sentenced Mr. Harris in 2006, I found that his offense involved more than 1.5 kilograms of cocaine base. Tr. of Sentencing 43:2–7. At the time, Guidelines § 2D1.1(c)(1) provided that a defendant whose offense involved this quantity of the drug was subject to a base offense level of 38. *See* PSR ¶ 26. In 2014, however, the U.S. Sentencing Commission issued Amendment 782, which increased the amount of cocaine base required to trigger certain base offense levels, as well as Amendment 788, which made Amendment 782 retroactive. *United States v. Ramirez*, 846 F.3d 615, 618 (2d Cir. 2017); *see also* U.S. Sent'g Guidelines Manual app. C amends. 782, 788 (U.S. Sentencing Comm'n 2021); U.S. Sent'g Guidelines Manual § 2D1.1(c). If I were to sentence Mr. Harris today, my finding that he possessed 1.5 kilograms of cocaine base would put him at a base offense level of 32, rather than 38,[3] and a

---

[3] In fact, I found that Mr. Harris's offense involved a quantity of cocaine base "far in excess of 1.5

10

total offense level of 36. *See* U.S. Sent'g Guidelines Manual § 2D1.1(c)(4) (providing for a base offense level of 32 for a defendant who possesses at least 840 grams but less than 2.8 kilograms of cocaine base); PSR ¶¶ 26–31 (applying a four-level enhancement to Mr. Harris's base offense level for his leadership role in the offense); Tr. of Sentencing 43:2–7, 45:12–14 (same); U.S. Sent'g Guidelines Manual § 1B1.10(b)(1) (directing courts applying § 3582(c)(2) to "leave all other guideline application decisions" other than those based on amendments named in § 1B1.10 unaffected). With a criminal history category of VI, Mr. Harris's recommended guideline range would be 324 to 405 months' imprisonment—not the 360-months-to-life range applicable at the time. *See* U.S. Sent'g Guidelines Manual sent'g tbl.; PSR ¶¶ 50, 87; Tr. of Sentencing 45:18–21. This means that Mr. Harris is eligible for a sentence reduction under § 1B1.10, which allows courts to reduce the sentence of a defendant whose applicable guideline range was lowered after his sentencing by Amendment 782. U.S. Sent'g Guidelines Manual § 1B1.10(a), (d), (e). I am not, however, authorized to reduce Mr. Harris's sentence to anything below 324 months, "the minimum of the amended guideline range" now applicable. *See id.* § 1B1.10(b)(2)(A).

But while Mr. Harris is eligible for a sentence reduction of up to thirty-six months, § 3582(c)(2) directs me to impose such a reduction only if I find that it is warranted by the factors set forth in § 3553(a). As I explained above, *see* Discussion I, *supra*, Mr. Harris's personal history, his offense conduct, and the need for his sentence to reflect the gravity of his offense, afford

---

kilograms." Tr. of Sentencing 2. But because I made no specific finding as to the exact amount and decline to readjudicate the issue now, I will assume that the applicable base offense level is 32. *But see, e.g., United States v. Garcia*, No. 04-CR-603 (AJN), 2022 WL 255113, at *3 (S.D.N.Y. Jan. 26, 2022) (explaining that a district court ruling on a § 3582(c)(2) motion is permitted to "make factual findings regarding drug quantity that are supported by the record and consistent with [its] prior factual determinations" and denying the defendant's motion because the record demonstrated that his offense involved a quantity of drugs that made him ineligible for a sentence reduction (quoting *United States v. Valencia-Lopez*, 792 F. App'x 846, 849 (2d Cir. 2019))).

11

deterrence, and protect the public all lead me to conclude that his current sentence should stay in place. *Cf. United States v. Bright*, No. 06-CR-242 (LAP), 2022 WL 717881, at *1 (S.D.N.Y. Mar. 10, 2022) (finding that the same § 3553(a) factors that counseled against reducing a defendant's sentence under the First Step Act applied "with equal force" to his motion for a reduction pursuant to § 3582(c)(2)). I therefore deny his § 3582(c)(2) motion.

### III. I Deny Mr. Harris's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A).

Finally, Mr. Harris seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). This provision permits a court to reduce a defendant's sentence "after considering the factors set forth in [§] 3553(a) to the extent that they are applicable," if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[4] Addressing the first prong, the Second Circuit has explained that courts have discretion to consider "the full slate of extraordinary and compelling reasons" that a defendant may present in support of his motion and are not bound by the limited definition imposed by § 1B1.13 of the Guidelines. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 237–38 (quoting 28 U.S.C. § 994(t)).

---

[4] Section 3582(c)(1)(A) also requires that the defendant "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [wait for] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." The government concedes that Mr. Harris has satisfied this requirement. Opp. re. Mot. to Reduce 8 n.5; *see also United States v. Saladino*, 7 F.4th 120, 121, 123 (2d Cir. 2021) (holding that § 3582(c)(1)(A)'s "exhaustion requirement is a claim-processing rule that may be waived or forfeited by the government").

In support of his § 3582(c)(1)(A) motion, Mr. Harris primarily relies on evidence of his post-conviction rehabilitation. *See generally* Mot. to Reduce. While this alone would not constitute an extraordinary and compelling reason for his release, Mr. Harris does additionally point to his enlarged heart, high blood pressure, and diabetes and argues that these conditions make him particularly vulnerable to COVID-19. *Id.* at 25; Reply Mem. in Supp. 10; *see also* People with Certain Medical Conditions, *supra* (listing diabetes and possibly high blood pressure as factors that can make one "more likely to get very sick from COVID-19").[5] Courts in this circuit have found that medical issues that place a defendant at increased risk of serious illness from COVID-19 can qualify as extraordinary and compelling reasons for sentence reduction—particularly when the defendant has also offered other reasons, such as rehabilitation. *See, e.g.*, *United States v. Reiter*, No. 87-CR-132 (VSB), 2021 WL 1424332, at *9 (S.D.N.Y. Apr. 15, 2021) (collecting cases); *United States v. Nelson*, No. 10-CR-820 (NGG), 2022 WL 1469465, at *3–6 (E.D.N.Y. May 10, 2022) (finding that the defendant's rehabilitation, family circumstances, and COVID-19 concerns constituted extraordinary and compelling circumstances). It is true that in a number of cases in which courts have granted compassionate release based on the defendant's vulnerability to COVID-19, the defendant had more or more serious comorbidities than Mr. Harris does. *See United States v. Mirkovic*, No. 12-CR-691 (JFK), 2021 WL 1137980, at *4 (E.D.N.Y. Mar. 25, 2021) (finding that the defendant's obesity and heart conditions were not sufficiently serious to justify compassionate release and collecting cases); *United States v. Santos*, No. 01-CR-537 (ARR), 2021 WL 5205673, at *4 (E.D.N.Y. Nov. 9, 2021) (finding that the defendant's obesity

---

[5] Mr. Harris also cites the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013)—which came out after his trial and which the Second Circuit has held "did not announce a new rule of law made retroactive on collateral appeal," *United States v. Redd*, 735 F.3d 88, 92 (2d Cir. 2013)—as an extraordinary and compelling reason for his release. Mot. to Reduce 50–53. I do not address this argument, nor do I rely on it in my decision.

13

and heart conditions were not sufficiently serious to justify compassionate release and collecting cases). But particularly in light of Mr. Harris's inability to obtain his full medical records from Shawangunk, I am willing to accept that his efforts at rehabilitation combined with his medical concerns and the "harsh conditions of imprisonment occasioned by the COVID-19 pandemic," *United States v. Hatcher*, No. 18-CR-454 (KPF), 2021 WL 1535310, at *3–4 (S.D.N.Y. Apr. 19, 2021), meet the threshold to demonstrate extraordinary and compelling reasons. *Cf., e.g.*, *Nelson*, 2022 WL 1469465, at *5–6 (considering "the pandemic prison conditions" as a factor in support of finding extraordinary and compelling reasons, even though the defendant had not demonstrated that he was "a high-risk individual"); *United States v. Aller*, No. 00-CR-977 (JGK), 2022 WL 912749, at *2 (S.D.N.Y. Mar. 29, 2022) (accepting "that the defendant ha[d] shown extraordinary and compelling reasons for release" by arguing that, "as a result of Covid, his conditions of confinement" were particularly harsh); *United States v. Clark*, 97-CR-817 (DC), 2021 WL 1066628, at *4 (S.D.N.Y. Mar. 18, 2021) (finding that, "considered as a whole," the defendant's "harsh sentence, his completion of 85 percent of that sentence, his rehabilitation, and the ongoing COVID-19 pandemic are circumstances that rise to the level of extraordinary and compelling reasons qualifying [him] for compassionate release.").

Even allowing that Mr. Harris has established extraordinary and compelling reasons justifying his release, however, his motion fails when I consider the § 3553(a) factors. *See United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)."). As discussed above, *see* Discussion I, *supra*, these factors—particularly the history and characteristics of the defendant, his offense conduct, and the need for his sentence to reflect the severity of his offense, protect public safety, and afford deterrence—all counsel against a sentence reduction.

14

Weighing these factors against the somewhat thin extraordinary and compelling reasons Mr. Harris has provided, I find that a sentence reduction is not warranted.

Accordingly, I deny Mr. Harris's § 3582(c)(1)(A) motion for compassionate release.

## CONCLUSION

For the foregoing reasons, I deny Mr. Harris's motion in its entirety.

SO ORDERED.

        /s/_____
Allyne R. Ross
United States District Judge

Dated:     June 28, 2022
           Brooklyn, New York