UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X
    :
UNITED STATES OF AMERICA,    :    04-CR-203 (ARR)
    :
        *Plaintiff*,    :    <u>NOT FOR ELECTRONIC</u>
    :    <u>OR PRINT PUBLICATION</u>
    -against-    :
    :
DUPREE HARRIS,    :    **OPINION & ORDER**
    :
        *Defendant*.    :
    X
----------------------------------------------------------------------

ROSS, United States District Judge:

On June 28, 2022, I denied defendant Dupree Harris's motion for a sentence reduction

pursuant to 18 U.S.C. §§ 3582(c)(1)(B), 3582(c)(2), and 3582(c)(1)(A), finding that, though he

was eligible for a reduced sentence under all three provisions, the factors set forth in 18 U.S.C. §

3553(a) counseled against such a reduction. *See* Order Denying Motion to Reduce Sentence

("Order"), ECF No. 265. On July 11, 2022, Mr. Harris filed both a notice of appeal to the Second

Circuit and a motion for reconsideration directed at this court. *See* First Mot. for Reconsideration,

ECF No. 266; Notice of Appeal, ECF No. 267.[1]

When deciding a motion to reconsider in a criminal case, courts in the Second Circuit

generally apply "the Local Rule 6.3 standard for motions for reconsideration in civil cases." *United*

*States v. Zedner*, No. 06-CR-717 (ADS), 2006 WL 6201757, at *3 (E.D.N.Y. Nov. 17, 2006)

(citation and quotation marks omitted); *see also, e.g.*, *United States v. Reichberg*, No. 16-CR-468

---

[1] Though I normally would not have jurisdiction over a case that has been appealed to the Second
Circuit, Federal Rule of Criminal Procedure 37(a) provides that "[i]f a timely motion is made for
relief that the court lacks authority to grant because of an appeal that has been docketed and is
pending, the court may . . . deny the motion."

(GHW), 2018 WL 6599465, at *8 (S.D.N.Y. Dec. 14, 2018). Under this standard, the moving party

must "point to controlling decisions or data that the court overlooked—matters, in other words,

that might reasonably be expected to alter the conclusion reached by the court." *United States v.*

*Almonte*, No. 14-CR-86 (KPF), 2014 WL 3702598, at *1 (S.D.N.Y. July 24, 2014) (quoting

*Schrader v. CSX Trans. Inc.*, 70 F.3d 255, 256–57 (2d Cir. 1995)). "The major grounds justifying

reconsideration are an intervening change of controlling law, the availability of new evidence, or

the need to correct a clear error or prevent manifest injustice." *Reichberg*, 2018 WL 6599465, at

*8 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Mr. Harris has not met this standard. In large part, his motion for reconsideration simply

repeats arguments he made in his original motion, citing previously submitted evidence of his post-

conviction rehabilitation and urging me to reduce his sentence on this basis. *See* First Mot. for

Reconsideration 2–3. I have already addressed these arguments, however: as I explained in my

original opinion, I considered and took "seriously Mr. Harris's efforts while incarcerated to change

the direction of his life" but concluded that these efforts were "ultimately overshadowed by the §

3553(a) factors that support maintaining his current sentence." Order 7, 8–9. Though Mr. Harris

may disagree with how I weighed the record before me, any argument that I "overlooked" the

evidence of his rehabilitation is incorrect.

Also unavailing is Mr. Harris's contention that I gave inadequate consideration to the fact

that his criminal history began when he was a teenager and to how his age and brain development

could have affected his decision making. *See* First Mot. for Reconsideration 1, 4. While I

appreciate the role Mr. Harris's youth may have played in his early criminal history, I note that he

was in his mid-twenties when he committed the offenses at issue here and was thirty-two years old

when I sentenced him in 2006. *See* Presentence Investigation Report ("PSR") p. 2 & ¶¶ 5–18. In

2

any event, the cases Mr. Harris cites, which, in his words, explain "key evolutions in criminal sociological theory now applied to youth," First Mot. for Reconsideration 1, are not controlling in this context and do not affect my decision to maintain his current sentence. *See, e.g.*, *Miller v. Alabama*, 567 U.S. 460, 465, 471–80 (2012) (holding that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment[]," in large part because "juveniles have diminished culpability and greater prospects for reform"); *United States v. Rosario*, No. 12-CR-533 (ARR), 2018 WL 3785095, at *1–3 (E.D.N.Y. Aug. 9, 2018) (reducing the life sentence of a defendant who was just seventeen years old when he and his co-defendants killed multiple unarmed victims during a robbery and taking into consideration, among other things, the possibility that the defendant's age made him unable to foresee that the crime might "end in bloodshed" and spurred him to "act with childish impulsivity").

Finally, I am not convinced by Mr. Harris's reference to recent cases in which courts have granted defendants' requests for sentence modifications. Mr. Harris argues that "his crime of conviction here pales by comparison" to those of the other defendants, First Mot. for Reconsideration 1–2, but he overlooks the many differences between their cases, including the various mitigating factors present for those defendants. *See United States v. Lugo*, No. 01-CR-922 (NG), 2022 WL 732153, at *7–9 (E.D.N.Y. Mar. 11, 2022) (modifying the sentence of a sixty-three-year-old defendant whose sentence was far longer than those of codefendants convicted of "similarly egregious" crimes, who had demonstrated his post-conviction rehabilitation, and who was particularly vulnerable to COVID-19 following a stroke); *United States v. Francisco-Ovalle*, No. 18-CR-526 (AJN), 2022 WL 1094730, at *1 (S.D.N.Y. Jan. 13, 2021) (granting the defendant's motion for reconsideration and motion for compassionate release after the defendant's wife died, leaving him "as the sole reliable caretaker for his two young children"). My denial of

Mr. Harris's motion was the product of "an individualized assessment based on all the sentencing factors in § 3553(a)," *United States v. Rigas*, 583 F.3d 108, 116 (2d Cir. 2009); the decisions of other courts regarding defendants with "different underlying medical conditions, criminal histories, convictions, and sentences," *United States v. Brown*, 21-122, 2021 WL 5872940, at *2 (2d Cir. Dec. 13, 2021), do not persuade me to reconsider my decision here.[2]

As none of the arguments Mr. Harris raises can "reasonably be expected to alter [my] conclusion," I deny his motion for reconsideration.

SO ORDERED.


_____/s/_____
Allyne R. Ross
United States District Judge


Dated:          August 3, 2022
                Brooklyn, New York

---

[2] Over the course of his motion, Mr. Harris briefly makes two additional arguments. First, he claims that it was his co-defendant William Cobb who first "brought Mr. Harris to the area" where the conspiracy took place, which Mr. Harris seems to believe mitigates his own role as the conspiracy's leader. First Mot. for Reconsideration 3. Whether Mr. Cobb introduced Mr. Harris to Glens Falls is immaterial to my determination, based on the entire record before me, that Mr. Harris led the conspiracy. Second, Mr. Harris points to the concern I expressed in the original opinion that, if he is released, there is a "reasonable risk that he may retaliate against those involved in his criminal operation, especially the people who testified against him at trial." Order 9. Though Mr. Harris sees this comment as "shocking speculation," First Mot. for Reconsideration 5, it is grounded in his documented history of violently threatening those who oppose him and his separate conviction for bribing and intimidating witnesses in his stepbrother's trial. PSR ¶¶ 9, 10, 18, 47.